# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| SHEREEN N. NOORIGIAN,<br><br>Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of the United States Social Security Administration,<br><br>Respondent. | Case No.: 1:16-CV-00507-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Shereen N. Noorigian's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's decision denying her application for child's insurance benefits under Title II of the Social Security Act and for adult Supplemental Security Income under Title XVI of the Social Security Act. *See generally* Pet. for Review (Docket No. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. <u>ADMINISTRATIVE PROCEEDINGS</u>

In August 2013, Shereen N. Noorigian ("Petitioner") filed an application for disability benefits, including a childhood disability, alleging disability beginning May 30, 2011. These claims were initially denied on September 24, 2013 and, again, on reconsideration on October 25, 2013. On October 30, 2013, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On June 22, 2015, ALJ Luke A. Brennan held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Joseph F. Brown, appeared and

**MEMORANDUM DECISION AND ORDER - 1**

testified. Impartial vocational expert, Polly A. Peterson, also appeared and testified at the same June 22, 2015 hearing.

On July 1, 2015, the ALJ issued a Decision denying Petitioner's claim, finding that she was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council on August 12, 2015 and, on September 20, 2016, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely filed the instant action, arguing that "[t]he conclusions and findings of fact of the defendant are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review, p. 2 (Docket No. 1). In particular, Petitioner identifies the "issues" here as:

1. Was the ALJ's credibility determination in accordance with controlling legal standards when he dismissed the testimony of the Petitioner and her grandmother, Hester I. Riggs, concerning intensity, persistence, and limiting effects of her severe impairments?

2. Did the AL mischaracterize and/or ignore medical evidence, testimony, and third-party statements that were supportive of the Petitioner's claim in reaching his adverse decision?

Pet.'s Brief, p. 3 (Docket No. 12). Petitioner therefore requests that the Court either reverse the ALJ's decision and find that she is entitled to disability benefits or, alternatively, remand the case for further proceedings and award attorneys' fees. *See id.* at pp. 9-10; *see also* Pet. for Review, p. 2 (Docket No. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

**MEMORANDUM DECISION AND ORDER - 2**

Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *See Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.

**MEMORANDUM DECISION AND ORDER - 3**

*See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity since May 30, 2011, the alleged onset date." (AR 14).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it

**MEMORANDUM DECISION AND ORDER - 4**

significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following severe impairments: Asperger's Syndrome, personality disorder, and general anxiety disorder. *See* (AR 14).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 15-16).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must

**MEMORANDUM DECISION AND ORDER - 5**

be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: "[S]he can perform simple, routine work tasks. She can tolerate occasional interaction with supervisors, coworkers, and the public." (AR 16-18).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Petitioner has no past relevant work, but found that there are jobs that exist in significant numbers in the national economy that Petitioner can perform, including hand packager, fruit cutter, and building maintenance laborer. *See* (AR 18-19). Therefore, based on Petitioner's age, education, and RFC, the ALJ concluded that Petitioner "has not been under a disability, as defined in the Social Security Act, from May 30, 2011, through the date of this decision." (AR 19) (internal citation omitted).

**B. Analysis**

    1. <u>Petitioner's Credibility</u>

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)

**MEMORANDUM DECISION AND ORDER - 6**

(ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities). In evaluating a claimant's credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 96-7p. In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). However, to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *See Holohan*, 246 F.3d at 1208 (citing *Reddick*, 157 F.3d at 722).

Here, Petitioner alleges an inability to engage in *any* work activity, owing to her social anxiety and an inability to work with or be near others. For example, within her August 30, 2013 "Function Report – Adult," Petitioner states:

- "It's difficult to communicate and I get overwhelmed easily."

- She does not go anywhere on a regular basis, rarely attends social events, and needs someone to accompany her.

- "I have trouble talking to guests in our house and my family and I do not get along."

- "I go out less and have more trouble communicating with others."

- "I have trouble understanding when people try to communicate with me, and I am easily uncomfortable when dealing with someone I don't know very well."

- "I get confused and overwhelmed when given spoken instructions."

**MEMORANDUM DECISION AND ORDER - 7**

- "I do not handle stress well."

- "It is difficult to adjust to significant changes."

- "I get nervous when people stand too close to me. I pace my room to calm down. I hat talking about myself to anyone."

(AR 303, 307-09). She confirmed as much during the June 22, 2015 hearing, testifying that she did not have any friends; did not go to social events because they caused anxiety and made her "really nervous or fearful"; and did not go to the grocery store because there are "[t]oo many people there." (AR 56-57).

The ALJ, however, concluded that, while Petitioner's medically-determinable impairments could reasonably be expected to cause her alleged symptoms, her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible . . . ." (AR 16). The ALJ reached this conclusion because the record was inconsistent with the limitations she described; her treatment was limited; and her alleged limitations were contradicted by her daily activities. *See* (AR 16-18). For the reasons that following, the ALJ's justification in this regard amounts to clear and convincing reasons for questioning Petitioner's credibility.

First, there is no dispute that Petitioner has problems with her social functioning skills, and that such problems are severe. To be sure, the ALJ concluded as much when making his disability determination. *See supra* (citing (AR 14) (ALJ stating that Petitioner's Asperger's Syndrome, personality disorder, and general anxiety disorder "produce limitations which meet the definition of 'severe' in that they significantly limit (have more than a minimal effect on) her ability to perform basic work activities."). Even so, the ALJ specifically accounted for Petitioner's limitations during the fourth step of the sequential process (RFC analysis). *See, e.g.*, (AR 17, 18) ("In any event, the residual functional capacity accommodates these difficulties . . . .

**MEMORANDUM DECISION AND ORDER - 8**

In any event, the limitations on social interaction in the residual functional capacity would accommodate her symptoms and relieve stress."). Therefore, to the extent Petitioner's arguments insist on the existence of certain limiting impairments, they miss the point. *See* Pet.'s Brief, pp. 3-6 (Docket No. 12). The question at this stage is not whether such limitations exist but, rather, whether Petitioner is able to work even with such limitations. *See, e.g.*, (AR 57-58) (ALJ asking Petitioner: "If you were able to find a job that wasn't around other people, maybe cleaning a building like this at night when nobody's here, would you be able to do that?"; with Petitioner responding: "I don't know. Maybe.").

Second, as to the objective medical evidence, the ALJ properly noted the absence of treatment leading up to her alleged May 30, 2011 onset date, commenting: "That date has no clinical significance *as she received no medical care near that time*" and that she was first examined over one year later, on August 16, 2012. (AR 16) (emphasis added). "Objective medical evidence [(including *the amount* of treatment)] . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(2-3), 416.929(c)(2-3) (emphasis added).

Third, concerning the available post-onset date medical evidence, the ALJ considered the findings from Petitioner's medical providers. *See* (AR 16-18). Again, each of these records unquestionably support the existence of medical conditions impacting Petitioner's social functioning; however, from this review, the ALJ was able to identify discrepancies between Petitioner's allegations and the medical evidence, while simultaneously triangulating a "common denominator" among the medical providers' opinions concerning Petitioner's limitations that ultimately was reflected within the ALJ's RFC assessment. *See* (AR 17-18) (comparing notes from Ryan Hulbert, Ph.D., Michael Dennis, Ph.D., RaeAnn Calhoun (licensed clinical social worker), Brad Levitt, Ph.D., Mack Stephenson, Ph.D., and Barney Greenspan, Ph.D.); *see also*

**MEMORANDUM DECISION AND ORDER - 9**

*infra* (discussing ALJ's handling of provider notes). On the whole, these opinions – tested against one another for consistency and supportability – reveal a disconnect between Petitioner's claimed inability to work and the medical record.

Finally, despite Petitioner's alleged disabling symptoms, the ALJ pointed out that her daily activities suggest otherwise:

> Further, the record as a whole shows that the claimant is more capable at social functioning than alleged, as demonstrated by her ability to get along with her grandparents, attend college, attend and graduate high school, attend appointments, interact with others via the internet, and leave her home as needed.

(AR 18); *see also* (AR 51-52) (Petitioner testifying that she was in "mainstream classes" in high school, did not receive any extra help, and does not have "problems" with her grandparents); (AR 307) (Petitioner stating that she watches television with her family and chats with friends online); (AR 278-86) (Petitioner's high school teacher, Tina Meyers, acknowledging Petitioner's anxiety in social situations and aversion to physical contact, but explaining: "Talking to others is difficult for Sherry. She is very bright in many areas and she gets frustrated when others behave, act, or speak unintelligently. . . . . I was not sure how to deal with Sherry in the beginning, but by the time she had me her Senior Year, we connected very well. Students learned to ignore her outbursts and strange social behaviors and she fit quite well into the mainstream classroom setting. She even signed up to be my teacher's aide her last year of high school.").

Together, these reasons offer clear and convincing explanations as to why the ALJ did not find Petitioner's testimony entirely credible. This is not to say that the Court conclusively finds Petitioner not to be disabled under the applicable rules and regulations, or that Petitioner does not suffer from chronic pain; indeed, as expected, Petitioner identifies (or at least suggests the existence of) conflicting evidence in support of her position. While such conflicting evidence may not have been given the weight Petitioner would have preferred, the ALJ's

**MEMORANDUM DECISION AND ORDER - 10**

decision to doubt Petitioner's credibility in denying disability benefits contains clear and convincing reasons for doing so. As required by controlling law, the ALJ will not be second-guessed as to such conclusions, on the record here and the justifications provided. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.") (internal citations omitted). Therefore, the Court will not substitute its judgment when the evidence in the record can support the ALJ's findings.

2. Third-Party Statements

At the June 22, 2015 hearing, Petitioner's grandmother, Hester Riggs testified that Petitioner:

- Needed modified assignments in high school;
- Could only work during high school with certain accommodations;
- Had trouble with roommates during her first year of college;
- Comes across as being very rude with "cross expressions";
- Does not have any friends (but "might have some on the computer");
- Doesn't like crowds;
- Would not "be able to listen to somebody else give her orders";
- Cannot accept constructive criticism.

(AR 60-64). Similarly, in her August 31, 2013 "Function Report Adult – Third Party," Ms. Riggs indicated Petitioner's preference to be alone, alongside a general inability to function "in any group of people." (AR 316-17). Petitioner contends that the ALJ failed to give proper consideration to this testimony when making his disability determination . *See* Pet.'s Brief, pp. 4-5 (Docket No. 12).

**MEMORANDUM DECISION AND ORDER - 11**

To begin, lay witness testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must consider. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Competent lay witness testimony "cannot be disregarded without comment." To discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness." *Id.*; *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). But the ALJ is not required to discuss every witness's testimony on an individualized, witness-by-witness basis. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. *See id.* (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that, because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony")). The applicable regulations are in accord; they require the ALJ to consider testimony from family and friends submitted on behalf of the claimant, but do not require the ALJ to provide express reasons for rejecting testimony from each lay witness. *See* 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3); *see also* SSR 06-03p (recognizing that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision").

Here, the ALJ considered Ms. Riggs's testimony/statement and gave it "some weight as the [Petitioner's] social functioning deficits were noted." (AR 18). At the same time, the ALJ recognized that Petitioner "was able to leave her home, shop in public, and was not really limited

**MEMORANDUM DECISION AND ORDER - 12**

at all in her activities of daily living or concentration/pace/persistence." *Id.* More importantly, as with the ALJ's consideration of Petitioner's own credibility, the deficits noted by Ms. Riggs were incorporated into Petitioner's RFC with accompanying nonexertional limitations – namely, that Petitioner can perform simple, routine work tasks; and can tolerate occasional interaction with supervisors, coworkers, and the public. *See* (AR 16).[1] Therefore, consistent with the credibility determination as to Petitioner, the ALJ's handling of Ms. Riggs's statements was appropriate when considering the balance of evidence contained in the record. *See, e.g.*, *Molina*, 674 F.3d at 1122 ("[A]n ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'") (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

3.  <u>Petitioner's Physicians' Conflicting Opinions</u>[2]

Petitioner claims that the ALJ improperly considered the medical evidence – specifically, the various examining physicians' opinions speaking to her functional limitations. *See* Pet.'s Brief, p. 6 (Docket no. 12) ("This is a frustrating situation where the evidence on hand clearly demonstrates severe mental impairments causing extreme social limitations, and where such evidence is ignored or twisted to support the judge's predisposition to deny this woman benefits simply because she was able to graduate high school."). The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *See Magallanes*, 881 F.2d at 750. The ALJ

---

[1] It should be mentioned that, while Ms. Riggs expressed concern about Petitioner's ability to take direction from others, Petitioner herself stated that she "get[s] along fine with authority figures," and has no difficulty doing what her grandparents ask her to do. *See* (AR 56-57, 309).

[2] Although the regulations governing the evaluation of medical evidence were recently amended, the version effective March 27, 2017 does not apply to the present claim. *See* 20 C.F.R. §§ 404.1527, 404.1520c.

**MEMORANDUM DECISION AND ORDER - 13**

must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

Here, Petitioner argues that the ALJ did not give the appropriate level of deference to (1) Dr. Hulbert's August 16, 2012 opinions, (2) Dr. Dennis's June 24, 2013 opinions, (3) Ms. Calhoun's November 2013 and October 2014 opinions; and (4) Dr. Levitt's October 7, 2014 opinions. *See* Pet.'s Brief, pp. 6-9 (Docket No. 12). None is a treating physician, and the opinions are contradicted. *See, e.g.*, (AR 87-97, 111-21) (Drs. Stephenson's and Greenspan's opinions that Petitioner retains capacity to perform certain work). As such, the ALJ needs only specific and legitimate reasons for challenging the opinions, and the ALJ met this standard.

   a.  Dr. Hulbert

Dr. Hulbert saw Petitioner one time – on referral by the State of Idaho Disability Determination Services to conduct a mental health examination. Consistent with Petitioner's Asperger's Syndrome diagnosis, Dr. Hulbert found that her "prognosis for successful full-time employment, from a mental health standpoint, is seen as poor to fair." (AR 385). However, the

**MEMORANDUM DECISION AND ORDER - 14**

ALJ gave Dr. Hulbert's opinions only "partial weight," reasoning that, while "the social functioning difficulties were consistent with the record as a whole," Dr. Hulbert "did not fully explain the meaning of 'poor'." (AR 17). The ALJ's criticism of Dr. Hulbert's opinion is based upon the ALJ's conclusion that there is no basis from which to assess whether Petitioner is able to work, if certain accommodations (which address Petitioner's understood limitations) are taken into account. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); *see also Hoge v. Berryhill*, 2017 WL 4881586, at *9 (D. Or. 2017) ("[T]he ALJ's conclusion that Dr. Freed's report was generally conclusory and inadequately explained was a rational interpretation of this evidence; as such, it should be upheld as a specific and legitimate reasons, supported by the record, to disregard Dr. Freed's opinion.") (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Regardless, the ALJ folded Dr. Hulbert's more detailed opinions on Petitioner's functional limitations into the RFC assessment. *See* (AR 17) ("In any event, the residual functional capacity accommodates these difficulties, and Dr. Hulbert's objective exam notes showed the claimant was more capable socially than alleged.").

      b.     Dr. Dennis

Dr. Dennis saw Petitioner once, on a referral from the vocational rehabilitation counselor "for an evaluation to determine appropriateness for VR sponsored mental health counseling." (AR 386). At the outset, Dr. Dennis described Petitioner as:

> This young woman initially presented as quite anxious and nervous, with odd and somewhat constricted/mildly blunted affect. She was quite fidgety. She was

vague with information. She was socially awkward. She wore sunglasses throughout the interview, and when I asked if these were necessary because of the light sensitivity or feeling nervous, she replied "Both." Although initially rapport was difficult to establish, she eventually appeared to relax a little bit once we got into more conversational interactions about her interests such as art and an Internet comic she is interested in developing, and she was able to go on at length about this topic. Once she became more relaxed and conversational it was apparent that she is of at least average if not above average overall intelligence, and no specific learning problems were directly observable.

*Id*.

After discussing Petitioner's background, her daily functioning, and mood, Dr. Dennis addressed Petitioner's "social deficits." On this last point, Petitioner complains that the ALJ understated Dr. Dennis's findings, arguing that "the ALJ essentially rewrote Dr. Dennis's opinion to state that the doctor 'noted that she had exhibited only some of the social deficits expected'" and that "[t]his is quite the opposite of what the doctor actually said – which is that she exhibited severe social deficits which supported her diagnosis." Pet.'s Brief, p. 7 (Docket No. 12) (quoting (AR 17)). The record indicates that Dr. Dennis characterized Petitioner's "social deficits" variously – including as "*at least some of* the social deficits one would see with a pervasive developmental disorder"; "*some significant* social deficits"; and "*some severe* social deficits." (AR 387-88) (emphasis added). Regardless of whether quantifiable differences might exist between these descriptions, there was no connecting of the dots made by Dr. Dennis as to how Petitioner's social deficits (whatever Dr. Dennis believed them to be) translate to her ability, or inability, to sustain work – the ALJ's exact concern when addressing Dr. Dennis's opinions. *See* (AR 17) ("Nonetheless, [Dr. Dennis] never opined that [Petitioner] was unable to perform work activity within the confines of the residual functional capacity.").

**MEMORANDUM DECISION AND ORDER - 16**

Even so, the ALJ incorporated the discernable substance of Dr. Dennis's opinions vis à vis Petitioner's functional limitations into the RFC finding. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (holding that limitation to "no public contact" and "no significant background activity" sufficiently accommodated marked limitations in social functioning, including opinion that claimant needed social isolation due to PTSD).

   c. *Ms. Calhoun*

Ms. Calhoun is a licensed clinical social worker. Ms. Calhoun indicated in two separate mental residual functional capacity assessments that Petitioner had marked limitations in her ability to work in coordination with others, and had extreme difficulty interacting with, asking simple questions of, or getting along with others. *See* (AR 403-04, 411-14). Ms. Calhoun ultimately opined that Petitioner "would have extreme difficulty dealing in any or majority of environments due to having extreme difficulty tolerating other individuals." (AR 414).

The ALJ gave these opinions "little weight" because they lacked explanation (or substantiation within Ms. Calhoun's treatment notes) and are at odds with the examination notes and accepted opinions from Drs. Hulbert and Dennis. (AR 17). The Court concludes that the ALJ's findings in this regard are supported by his record. *See supra*; *see also Young v. Heckler*, 803 F.2d 963, 967-68 (9th Cir. 1986) (affirming ALJ's rejection of treating physician's opinion because it was brief and contradicted by other opinions in record).[3]

---

[3] Additionally, SSR 06-03p provides that licensed clinical social workers are not "acceptable medical sources under applicable social security regulations." In other words, as a licensed clinical social worker, Ms. Calhoun's credentials are not of the same degree as other medical providers in the record. While this alone is no reason to reject her opinion outright, it can justify affording her opinion less weight. *See* SSR 06-03p ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source . . . .'").

**MEMORANDUM DECISION AND ORDER - 17**

d. *Dr. Levitt*

Dr. Levitt also saw Petitioner once and issued a mental residual functional capacity assessment that more-or-less mirrored Ms. Calhoun's assessment, although with no "extreme" impairment ratings. *Compare*, (AR 403-04, 411-14), *with* (AR 415-18). However, Dr. Levitt explained his assessment in the context of an earlier psychological examination (one that does not appear to be acknowledged or addressed by the ALJ). *See* (AR 416-17) (citing (AR 405-10)). Still, in regard to the lynchpin issue of Petitioner's ability to work, Dr. Levitt stated only: "Probably not capable of consistently sustaining work efforts on a full-time basis anywhere social interactions are needed." (AR 418); *see also* (AR 410). This opinion also is not inconsistent with the ALJ's analysis of Petitioner's RFC, particularly when considering the corresponding nonexertional limitations listed. *See supra*. The ALJ had before him a broader task, and because Dr. Levitt never considered (like Dr. Dennis) whether Petitioner was able to work with these nonexertional limitations in place, the ALJ properly could decide to give only "partial weight" to his opinions (also like Dr. Dennis). *See supra*.

There is no question that Petitioner suffers from several impairments (acknowledged as "severe" by the ALJ) that impact her ability to work; however, the ALJ provided specific legitimate reasons for rejecting/questioning certain opinions contained in the medical record. These opinions were not given the weight Petitioner argues that they deserved; however, such opinions clearly were considered in the context of the surrounding medical record.

---

At the same time, the Commissioner has directed that the opinions of such providers are nonetheless "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id*.

**MEMORANDUM DECISION AND ORDER - 18**

The Court's duty here is not to resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court must decide whether the ALJ's decision that Petitioner is not disabled is supported by the record. In this record, there are conflicting medical opinions, testimony, and accounts that inform the ALJ's decisions on how to consider the various opinions. His decision to discount certain opinions while crediting others is supported by clear and convincing, specific, and legitimate reasons Hence, because the evidence can reasonably support the ALJ's conclusions in these respects, this Court will not substitute its judgment for that of the ALJ's even if this Court were to have a different view. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

## IV. **CONCLUSION**

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 f.2d at 1549.

The evidence relied upon by the ALJ can reasonably and rationally support the ALJ's well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence. Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

**MEMORANDUM DECISION AND ORDER - 19**

## V. ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.

DATED: January 31, 2018

Ronald E. Bush
Chief U.S. Magistrate Judge